FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2007 SEP -4  PM 3:05

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT MYERS DIVISION

KENNETH NESMITH,

        Plaintiff,

vs.                                 Case No.   2:05-cv-582-FtM-34SPC

MIKE SCOTT; BILLY ODRAIN

        Defendants.

_____

**OPINION AND ORDER**[1]

I.

This matter comes before the Court upon review of the Defendants' Motion for Summary Judgment.[2] See Defendant's [sic] Motion to Dismiss (Doc. #24, Mot. S.J.). Defendants referenced several exhibits in the motion, but failed to attach them. See generally Id. However, Defendants subsequently filed the following exhibits in support of their motion: (1) Lee County Sheriff's Department booking sheet for Plaintiff (Doc. #34-2, Exh. A); (2) the affidavit of Michael Johnson, Health Services Administrator at the Lee County Jail, attaching Plaintiff's medical records from the jail (Docs. #34-3, #34-4, Exh. B); and (3) the affidavit of Captain

---

[1] This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available electronically. However, it has been entered only to decide the motions addressed herein and is not intended for official publication or to serve as precedent.

[2] Although titled a "Motion to Dismiss," the Court previously construed the motion as a motion for summary judgment pursuant to Fed. R. Civ. P. 56 since the Defendants relied on materials outside the four corners of the Complaint. See Doc. #26.

William Perri, attaching a "current and up-to-date" copy of the Inmate Rules and Regulations (Doc. #34-5, Exh. C) at the Lee County Jail.[3] Plaintiff filed a Response to the Defendants' motion (Doc. #41, Pl's Response) and attached his own affidavits (Doc. #40, Aff. I; Doc. #49, Aff. II).

## II.

Plaintiff, who is proceeding *pro se*, filed a civil rights complaint form on December 8, 2005, pursuant to 42 U.S.C. § 1983 while a pre-trial detainee at the Lee County Jail. See Civil Rights Complaint Form (Doc. #1, Complaint). The Complaint named two Defendants: Mike Scott, Lee County Sheriff; and Billy O'Drain, an employee of Prison Health Services. Id. at 1. Plaintiff claims violations of his Eighth Amendment[4] rights stemming from the Defendants alleged deliberate indifference to Plaintiff's serious medical condition. Id. at 8-10.[5]

---

[3]Although Captain Perri purports to provide the Court with an "up-to-date copy" of the "Inmate Rules and Regulations: Inmate Handbook" the item he attaches consists of only two pages and does not appear to be a complete copy of the "Inmate Rules and Regulations: Inmate Handbook."

[4]Plaintiff's rights as a pre-trial detainee arise from the Fourteenth Amendment. Cottone v. Jenne, 326 F.3d 1352, 1357 n.4 (11th Cir. 2003) (citing Ingraham v. Wright, 430 U.S. 651, 671 (1977)).

[5]For citation purposes, the page numbers referenced herein are those that appear scanned at the top of the page on the Court's CM/ECF system.

A review of the record reveals the following undisputed facts:[6] On November 15, 2005, Plaintiff had a haircut from an inmate barber, who allegedly used unsanitary hair clippers. Id. at 8-9. On November 16, 2005, Plaintiff felt itchy and developed a rash on his face, back, shoulders and behind his ears. See Id. That same day, Plaintiff declared a "medical emergency" and a nurse came to see him within twenty minutes. Id. at 9, Grievance at Doc. #9, p. 5. That evening Plaintiff was provided with hydrocortisone cream. Complaint at 9. Plaintiff alleges the hydrocortisone cream did not help and his condition worsened to the point that his face was swollen, glands were sore, and his skin began to leak fluid. Id. Plaintiff contends that he went for weeks without medical attention or the "proper" medication for his condition. Id., Pl's Response at 1-2.

According to Plaintiff's medical records, Prison Health Services saw Plaintiff on numerous occasions and prescribed various treatment regimes for his skin condition. See generally Def's Exh. B at Docs. #34-3, #34-4. Plaintiff admits that he repeatedly saw Prison Health Services from November 16, 2005, thru June 26, 2006, and concedes that the medical department used nine different treatments, albeit "unsuccessful" treatments. Pl's Response at 4.

---

[6]At the summary judgment stage, the Court construes all facts in the light most favorable to Plaintiff, the non-moving party. Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citation omitted).

According to the Prison Health Services Medical Records, on November 20, 2005, Prison Health Services provided a certain (name unintelligible) soap to Plaintiff. Def's Exh. B at Doc. # 34-4, p. 10. On November 28 thru December 8, 2005, Plaintiff was prescribed Keflex. Id. Plaintiff was prescribed prednisone on December 1 thru December 6, December 20 thru December 25, 2005, and December 28 thru January 2, 2006. Id. at 9-11, Doc. #34-3 at 2. Additionally, these records establish that Prison Health Services routinely provided Plaintiff with other medications for this condition, including A & D ointment and Selsun shampoo. Def's Exh. B at Doc. #34-3, p. 9-15, 33. By January 13, 2006, the medical records indicate that Plaintiff no longer had a rash, but still complained of itching. Def's Exh. B at Doc. #34-3, p. 28.

Defendants filed the instant motion arguing that: (1) Plaintiff failed to exhaust his administrative remedies; (2) the Complaint is moot since Plaintiff seeks only injunctive relief; and (3) the Complaint does not state a constitutional claim against Defendants Mike Scott or Billy O'Drain.

III.

With respect to the standard for granting summary judgment, the Eleventh Circuit Court of Appeals has stated:

> [S]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

> that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

<u>In re Optical Technologies, Inc.</u>, 246 F.3d 1332, 1334 (11th Cir. 2001). "A factual dispute alone is not sufficient to defeat a properly pled motion for summary judgment." <u>Teblum v. Eckerd Corp. of Fla., Inc.</u>, Slip Copy, 2006 WL 288932 *1 (M.D. Fla. 2006). Instead, "[o]nly factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." <u>Lofton v. Secretary of Dept. of Children and Family Services</u>, 358 F.3d 804, 809 (11th Cir. 2004). The moving party bears the burden of demonstrating to the Court that based upon the record no genuine issues of material fact exist that should be decided at trial. <u>Hickson Corp. v. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)(citing <u>Celotex</u>, 477 U.S. at 323). "When a moving party has discharged its burden, the non-moving party must 'then go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

"It is true that on a motion for summary judgment, all reasonable inferences must be made in favor of the non-moving

party." Cuesta, 285 F.3d at 970 (citation omitted). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Id. (citations omitted). Additionally, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Burger King Corp. v. Weaver, 169 F.3d 1310, 1321 (11th Cir. 1999)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

IV.

Title 42 U.S.C. § 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). Here, the Defendants are certainly state actors and the Complaint attempts to allege violations of the Fourteenth Amendment based upon the Defendants' alleged deliberate indifference to Plaintiff's serious medical condition. See generally Complaint.

"[D]eliberate indifference to [the] serious medical needs of [a] prisoner [ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)(quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)); Campbell v. Sikes, 169 F.3d 1353 (11th Cir. 1999).  Although, Plaintiff's rights as a pre-trial detainee are governed by the Fourteenth Amendment rather than the Eighth Amendment, the applicable standard is the same.  Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996).  Thus, the case law developed with regard to the Eighth Amendment prohibitions against cruel and unusual punishment is equally applicable to claims arising under the Fourteenth Amendment.  Cottone, 326 F.3d at 1357 n.4 (citing Ingraham, 430 U.S. at 671).

In order to state a claim for a violation under the Eighth Amendment, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  This showing requires a plaintiff to satisfy an objective and a subjective inquiry.  Farrow, 320 F.3d at 1243 (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000)).  Thus, a plaintiff must first show that he had an "objectively serious medical need."  Id.  Second, a plaintiff must establish that a defendant acted with "deliberate indifference" by showing: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the

inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); (2) disregard of that risk; and (3) conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). Inadvertence or mere negligence in failing to provide adequate medical care does not rise to a constitutional violation. Farrow, 320 F.3d at 1243. Rather, "medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).

The Supreme Court has stated that decisions such as whether an x-ray, additional diagnostic techniques, or other forms of treatment are indicated are "[c]lassic example[s] of matters for medical judgment." Estelle, 429 U.S. at 107. The course of treatment chosen by a medical official would appear to be such "a classic example of a matter for medical judgement." See Id. Thus, no constitutional violation exists where an inmate and a prison medical official merely disagree as to the proper course of medical treatment. See Harris, 941 F.2d at 1505.

V.

## A. Exhaustion of Administrative Remedies

Before turning to the merits of the Complaint, the Court must address whether the record demonstrates that Plaintiff adequately exhausted his administrative remedies. On April 26, 1996, the President signed into law the Prison Litigation Reform Act (hereinafter "PLRA"), which amended The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e, to read as follows:

> (a) Applicability of administrative remedies. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility **until such administrative remedies as are available are exhausted.**

42 U.S.C. § 1997e(a)(emphasis added).

The PLRA's exhaustion requirement is intended to: (1) "eliminate unwarranted federal-court interference with the administration of prisons," (2) "'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case,'" and (3) "'reduce the quantity and improve the quality of prisoner suits.'" Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006)(quoting Porter v. Nussle, 534 U.S. 506, 524-25 (2002)) (internal footnote and citations omitted). As a result of the PLRA, consideration of "[e]xhaustion is no

longer left to the discretion of the district court, but is mandatory." Woodford, 126 S. Ct. at 2382; (referencing Booth v. Churner, 532 U.S. 731, 739 (2001)). See also Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Additionally, the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they involve excessive force or some other wrong doing. Woodford, 126 S. Ct. at 2382; Nussle, 534 U.S. at 532; Booth, 532 U.S. at 741. Inmates, however, "are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 127 S. Ct. 910, 921 (2007). Rather, pursuant to the PLRA, failure to exhaust administrative remedies is an affirmative defense. Id.

"[T]he PLRA exhaustion requirement requires **full** and **proper** exhaustion."[7] Woodford, 126 S. Ct. at 2387 (emphasis added). Accordingly, in Johnson v. Meadows, 418 F.3d 1152 (11th Cir. 2005), the Eleventh Circuit, noting the "policies favoring exhaustion," held that the PLRA contains a procedural default component which arises where an inmate fails to avail himself in a timely fashion of an institution's administrative process. Id. at 1156, 1159,

---

[7] "[A] prisoner should include as much relevant information as he reasonably can in the administrative grievance process." Brown v. Sikes, 212 F.3d 1205, 1207-1208 (11th Cir. 2000).

cert. denied, Johnson v. Meadows, 126 S. Ct. 2978 (2006). Thus, where an inmate's grievance is denied because of a failure to timely pursue all administrative remedies, that inmate is barred from bringing a federal action on that claim since the inmate cannot demonstrate full exhaustion of remedies. See Id. at 1158. In determining whether a plaintiff has exhausted the applicable administrative remedies, a court does "not review the effectiveness of those remedies, but rather whether remedies were available and exhausted." Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

Here, Defendants argue that the Complaint is procedurally barred under the PLRA because Plaintiff failed to exhaust his administrative remedies. See Mot. S.J. at 6-9. Specifically, Defendants argue that the Complaint is presented on the standard § 1983 form that instructed Plaintiff to attach evidence of exhaustion, but Plaintiff failed to do so. Id. at 8. Further, Defendants direct the Court's attention to its previous Show Cause Order in which the Court directed Plaintiff to provide the Court copies of the relevant grievances. (Doc. #8, Show Cause Order). Defendants argue that Plaintiff's Response to the Court's Show Cause Order, (Doc. #12, Response to Show Cause Order), was insufficient considering that none of the eleven pages Plaintiff filed in response to the Show Cause Order consisted of grievances.

Mot. S.J. at 8. Thus, Defendants argue, since Plaintiff did not timely exhaust his administrative remedies prior to filing this action, Plaintiff's Complaint is procedurally defaulted. Id. at 9.

Defendants' contention that it is Plaintiff's burden to affirmatively plead and prove exhaustion of his administrative remedies in his Complaint is incorrect. To the contrary, failure to exhaust administrative remedies is an affirmative defense. Bock, 127 S. Ct. at 921. Additionally, based upon the record, the Court finds that the Defendants are not entitled to summary judgment on the basis of Plaintiff's alleged failure to exhaust.

The Lee County Jail has different forms that an inmate may use to write a grievance.[8] The jail provides inmates with "grievance forms" and "request forms". Def's Exh. C at Doc. #34-5, p. 2. A grievance may be written on a "request form" so long as the form is identified to be a "grievance". Id. A request form may also be used when an inmate appeals a disciplinary charge or a grievance. Id. Pursuant to the Lee County Jail policy concerning issues of a medical nature, "medical requests or concerns go on a different form," but the policy does not specify which form an inmate should use to grieve a medical issue. Id. Additionally, the Lee County Jail's grievance procedures provided by the Defendants fail to

---

[8]Notably, the attached policies do not include chapter numbers, section numbers, or a date of enactment.

-12-

include any requirement that an inmate appeal the resolution of a medical grievance.

Here, Plaintiff's "grievances" were medical in nature. Plaintiff attached an "inmate medical request form" dated November 17, 2005, in which Plaintiff requested to see a doctor because the hydrocortisone cream was not working for his skin condition. See Response to Show Cause Order at 5. He indicated that the infection was getting worse. Id. The following day, Plaintiff received a written response, which confirmed that Plaintiff had a rash and referred Plaintiff for a medical evaluation. Id. On November 18, 2005, Plaintiff submitted another "inmate medical request form," addressing Plaintiff's skin condition and requesting antibiotics. Id. at 3. On November 19, 2005, Plaintiff submitted an "inmate request form" with a check mark beside both "complaint" and "grievance,"[9] addressed to Billy O'Drain/Medical Department again addressing his skin condition, noting that he could not sleep due to the itchiness. Id. at 1. Plaintiff received a written response on November 22, 2005. Id. On November 22, 2005, Plaintiff filed another "inmate medical request form," specifically addressed to "Mrs. Billy O'Drain," stating that Plaintiff did not receive his soap, Benadryl, or antibiotics for his skin condition. Id. at 2.

---

[9]The word "grievance" was marked through with a solid line. It is not clear who crossed-out the word "grievance."

Plaintiff received a written response to this grievance, which is undated. Id.

Other than the Defendants' exhibit consisting only of two pages of the Lee County Jail's grievance procedures, Defendants provide no other evidence regarding Plaintiff's exhaustion or refuting what is already in the record. Accordingly, based upon the record, the Court is unable to conclude that Plaintiff failed to comply with the grievance procedures or what other actions Plaintiff could have taken to further grieve his medical issue. Thus, the Court does not find that Plaintiff failed to exhaust his available administrative remedies and will proceed to address the merits of the Complaint.[10]

### B. Defendant Mike Scott, Sheriff of Lee County

In the Motion for Summary Judgment, Defendants cite to Monell v. Dept. of Soc. Serv., 436 U.S. 658, 691 (1978) and Marsh v. Butler County, Ala., 268 F.3d 1014, 1027 (2001) arguing that the

---

[10] Defendants also argue that the Complaint is moot since Plaintiff requested injunctive relief as his only remedy and was subsequently released from the Lee County Jail. Mot. S.J. at 10. However, after Plaintiff's release from the jail, Plaintiff was re-incarcerated and according to the docket history remains in custody at the Lee County Jail. Based on Plaintiff's subsequent incarceration, the Complaint is not moot. See Christian Coalition of Alabama v. Cole, 355 F.3d 1288, 1293 (11th Cir. 2004) (analyzing whether an issue is moot and explaining that when there exists a reasonable expectation that the same complaining party would be subjected to the same action again then the issue is not moot).

Complaint fails to state a constitutional claim as to the Sheriff because there are no facts supporting a conclusion that the Sheriff personally participated or was causally related to the alleged deliberate indifference to Plaintiff's serious medical condition. Mot. S.J. at 13-14. For the reasons set forth below, the Court agrees that the Defendants are entitled to summary judgment.

The Complaint does not specify whether Plaintiff intends to sue Defendant Scott in his individual capacity, in his official capacity, or both.[11] See generally Kentucky v. Graham, 473 U.S. 159, 165-166 (1985). Accordingly, the Court will construe the Complaint as suing Defendant Scott in both his official and individual capacity. See Hobbs v. Roberts, 999 F.2d 1526, 1528-1532 (11th Cir. 1993).

To the extent Plaintiff sues Defendant Scott in his official capacity, then this action is effectively an action against the governmental entity Scott represents, which in this case is Lee County. See Cook ex. rel Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1115 (11th Cir. 2005). A municipality may be liable in a § 1983 action "only where the municipality *itself*

---

[11] Notably, it appears Defendants address the claims against Defendant Scott in his official capacity only, considering the Defendants do not raise the defense of qualified immunity, which is available only for defendants named in their individual capacities. See Marsh v. Butler County, Ala., 268 F.3d 1014, 1024 n. 3 (11th Cir. 2001).

causes the constitutional violation at issue." Id. (citations omitted) (emphasis in original). Thus, a plaintiff must establish that an official policy of custom of the municipality was the "moving force" behind the alleged constitutional deprivation. Monell, 436 U.S. at 693-694. The Supreme Court has soundly rejected the possibility of *respondeat superior* as a basis of liability in § 1983 actions. Id. at 690-692. The Court finds the record is devoid of any facts indicating that a policy or custom of Lee County was the "moving force" behind Plaintiff's alleged lack of proper medical treatment.

To the extent Plaintiff intended to pursue a claim against Defendant Scott in his individual capacity, the record fails to support such a claim. Supervisory liability can be imposed under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). The record before the Court contains no factual allegations suggesting that Defendant Scott personally participated in the alleged deliberate indifference to Plaintiff's serious medical needs.

Absent personal participation by Defendant Scott, Plaintiff must show an affirmative causal connection between his acts and the

alleged constitutional deprivation. <u>Harris v. Ostrout</u>, 65 F.3d 912, 917 (11th Cir. 1995). The causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so [,]" or when a custom or policy of the supervisor results in deliberate indifference to constitutional rights. <u>Cottone</u>, 326 F.3d at 1360 (quoting <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1234 (11th Cir. 2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." <u>Brown</u>, 906 F.2d at 671. Alternatively, facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that they would do so and failed to stop them establishes a causal connection. <u>Cottone</u>, 326 F.3d at 1360 (quoting <u>Gonzalez</u>, 325 F.3d at 1234) (remaining citations omitted).

Here, Plaintiff does not claim that Defendant Scott instituted any custom or policy that resulted in deliberate indifference to the inmates' serious medical needs. Instead, Plaintiff vaguely claims that "people have been dying out here." Complaint at 10. However, Plaintiff does not provide any evidence that the Lee County Jail has a practice of deliberate indifference to the inmates' serious medical needs or even that Defendant Scott was

aware of such practice. Moreover, the record is devoid of facts supporting an inference that Defendant Scott directed a subordinate to act unlawfully or knew that one would do so and failed to stop that person.[12] Based on the foregoing, Defendants' motion will be granted with respect to Defendant Scott.

### C. Defendant Billy O'Drain, Prison Health Services

With respect to Defendant O'Drain, Defendants argue that the record does not support a finding that O'Drain was deliberately indifferent to Plaintiff's medical condition. Mot. S.J. at 12. To the contrary, Defendants argue that the record establishes that Plaintiff was provided with "extensive" medical treatment for his condition. Id.

Assuming *arguendo* that Plaintiff's skin condition constitutes a serious medical condition,[13] the Court finds that based upon the record before the Court Defendant O'Drain is entitled to summary judgment since there is no genuine issue of material fact as to whether Defendant O'Drain exhibited deliberate indifference. Specifically, the record evidences that Defendant O'Drain did **not**

---

[13]The Court, however, notes that another district court recently concluded that an "unspecified rash" that lasted for six weeks did not rise to the level of a serious medical condition. Hamm v. Riley, Slip Copy, 2007 WL 1377611 * 3 (D. S. Carolina May 7, 2007).

act with deliberate difference to Plaintiff's medical condition. Indeed, Plaintiff admits that he was repeatedly seen by Prison Health Services and his visits to the medical department are documented in the record. See Pl's Response at 4, Def's Exh. B at #34-3, #34-4. Further, the medical records demonstrate that Plaintiff was provided various types of medicines to treat his skin condition. Def's Exh. B at Docs #34-3, #34-4, supra at 3-4. For example, Prison Health Services first attempted to treat Plaintiff's skin problem with soap and topical ointments, including hydrocortisone cream. Id. After those treatments proved unsuccessful, Prison Health Services modified the treatment plan and prescribed prednisone several times. Id. Plaintiff's contention that he was refused the "right" or "proper" medication is an example of a difference of medical opinion and falls short of establishing a constitutional violation. See Estelle, 429 U.S. at 106-107; See also Ciccone v. Sapp, 2007 WL 1841079 *3-4 (11th Cir. 2007) (unpublished); Harris, 941 F.2d at 1507; Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (noting that despite Plaintiff's desire for different treatment, the care provided did not constitute deliberate indifference).

Based on the foregoing, the Court finds that Defendant O'Drain is entitled to summary judgment as a matter of law and as such will grant the Defendants' motion. To the extent any claims raised are

not addressed herein, the Court deems the claims to be without merit.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendants' Motion for Summary Judgment filed on behalf of Defendants Mike Scott and Billy O'Drain (Doc. #24) is **GRANTED**.

2. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this 4th day of September ~~August~~, 2007.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
UNITED STATES DISTRICT JUDGE

SA: alj
Copies: All Parties of Record